IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOE HUNSINGER,<br>　　　　Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | No. 3:25-cv-2227-N-BW |
| PARKING REVENUE RECOVERY<br>SERVICES, INC.,<br>　　　　Defendant. | §<br>§<br>§<br>§ | Referred to U.S. Magistrate Judge[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant Parking Revenue Recovery Service's

("PRRS's") Motion to Compel Arbitration filed on October 16, 2025.  (*See* Dkt. Nos.

12 ("Mot."), 13 ("D. Br.").)  PRRS requests that the Court stay these proceedings

pending the outcome of arbitration proceedings.  (D. Br. at 6.)  Plaintiff Joe

Hunsinger, appearing pro se in this action, filed his response on November 4, 2025.

(Dkt. No. 21 ("P. Resp.").)  PRRS has not filed a reply, and the time to do so has

passed.  *See* N.D. Tex. L. Civ. R. 7.1(f).

Based on the relevant filings and applicable law, the undersigned recommends

that PRRS's Motion (Dkt. No. 12) be denied.

---

[1] This pro se case has been referred to the undersigned magistrate judge for case management pursuant to 28 U.S.C. § 636(b)(1) by Special Order 3-251.  (*See* Dkt. No. 1.)

## I. BACKGROUND

Hunsinger filed this action on August 18, 2025, alleging that PRRS violated the Fair Debt Collection Practices Act ("FDCPA") and provisions of Article 392 of the Texas Finance Code relating to the collection of debts. (*See* Dkt. No. 3 ("Compl.").) According to Hunsinger's allegations in and attachments to the complaint, he received a Notice of Non-Compliance from PRRS stating that he parked at a parking lot at 900 Main Street in Dallas on May 5, 2025, without paying the required parking fee. (Compl. ¶¶ 3.01-3.02; Compl. Exh. A.) The notice demanded a payment of $55. (Compl. Exh. A.) It also contained two photos of a car entering the parking lot at 9:46 a.m. on May 5 and exiting later that day at 12:21 p.m. (*Id.*) The driver of the vehicle is not shown in either photo. (*See id.*)

The notice provided instructions to the recipient to submit a dispute. (*Id.*) Hunsinger mailed a letter to PRRS disputing the charge. (Compl. ¶ 3.03; Compl. Exh. B.) He alleges that PRRS failed to respond to his written dispute within 30 days and continued its debt-collection activities in violation of the FDCPA. (Compl. ¶ 3.05.) He further alleges that PRRS is not registered as a debt collector in Texas and has not complied with the necessary obligations to collect debts in Texas. (*See* Compl. ¶¶ 3.08-5.09.)

PRRS was served with process on August 22, 2025. (Dkt. No. 7.) On October 16, 2025, it appeared in this action through counsel and filed the instant motion to compel arbitration. PRRS relies on signs posted at the parking lot warning

2

those who park there that they must pay to park.  (*See* D. Br. at 7.)  The signs also include the following provision under the heading "**ARBITRATION**": "By parking on this Facility, you hereby agree that the sole remedy for all unresolved disputes is binding arbitration, and specifically waive the right to a jury trial, class action and/or class arbitration."  (D. Br. at 7.)  PRRS filed a declaration from its chief executive officer, Michael J. Drow, in support of the motion.  (Dkt. No. 16.)  In it, he avers that a "vehicle associated to Mr. Hunsinger entered the Main Street lot at 9:46am and subsequently exited at 12:21pm" and did not pay the required fee.  (*Id.* ¶¶ 3-4.)  As a result, PRRS sent the notice of non-compliance.  (*Id.* ¶ 4.)

Hunsinger argues against enforcement of the arbitration provision on two grounds.  First, he disputes that there was an agreement to arbitrate.  He states that he sold the vehicle depicted in the photograph months before it parked there and was not the person who used the parking lot that day.  (P. Resp. at 7.)  Second, assuming that a valid agreement to arbitrate had been formed, he argues that the claims asserted in his lawsuit do not fall within the scope of the arbitration provision.  (*Id.* at 10.)

## II.  LEGAL STANDARDS

Under the Federal Arbitration Act ("FAA"), "parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019).  The FAA provides that written agreements to arbitrate controversies arising out of an existing

contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (internal quotations and citations omitted). Thus, the FAA establishes "'a liberal federal policy favoring arbitration agreements.'" *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Because arbitration is a creature of contract, the FAA "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp.*, 565 U.S. at 98 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

Although there is a strong federal policy favoring arbitration, the policy "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 516 n.5 (5th Cir. 2019) (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478 (citing *Byrd*, 470 U.S. at 219). Rather, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). The FAA "simply requires

courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

When considering a motion to compel arbitration, a court employs a two-step inquiry. The court first determines "whether the parties agreed to arbitrate the dispute." *Clark v. Nordstrom, Inc.*, No. 3:18-CV-2100-D, 2019 WL 3428947, at *2 (N.D. Tex. July 30, 2019) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). Assessing whether the parties agreed to arbitrate the dispute, in turn, implicates two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (quoting *Webb*, 89 F.3d at 258). At the second step, the Court must determine "'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Webb*, 89 F.3d at 258 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). If the court determines that the parties agreed to arbitrate the dispute and there has been no legal constraint foreclosing arbitration, "the court must order the parties to arbitrate their dispute." *Clark*, 2019 WL 3428947, at *2 (internal citation omitted).

If the Court finds there is a valid agreement to arbitrate, it proceeds to the second question: whether the claim at issue is covered by the arbitration agreement." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017). This second question

usually is for the Court, unless the arbitration clause contains a valid delegation clause for an arbitrator to determine whether the claim falls within the arbitration agreement. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201–02 (5th Cir. 2016).

The party seeking to compel arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012); *see Fuller v. Healthcare Servs. Grp., Inc.*, No. 2:18-CV-032-D, 2019 WL 244487, at *2 (N.D. Tex. Jan. 17, 2019). Once the Court determines there is a valid agreement to arbitrate, the strong federal policy favoring the enforcement of the arbitration agreements applies, and all ambiguities must be resolved in favor of arbitration. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (citing *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002)). As the Supreme Court has stated, "'[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of America*, 363 U.S. at 582–83). Because of the strong presumption in favor of arbitration, the party opposing arbitration bears the burden to demonstrate either that the agreement is invalid or that the claims are outside of the agreement's scope. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

### III.  ANALYSIS

The first question for the Court is whether there is "any arbitration agreement at all."  *See Kubala*, 830 F.3d at 201.  To determine whether there is a valid agreement to arbitrate, courts "'apply ordinary state-law principles that govern the formation of contracts.'"  *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 939 (1995)).  PRRS relies on Texas law to argue that Hunsinger entered into a contract (D. Br. at 13), and Hunsinger does not dispute that Texas law applies.  "Under Texas law, a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding."  *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (internal quotation marks omitted).

PRRS relies on authority recognizing that a valid arbitration agreement does not require a party's signature.  Indeed, "neither the FAA nor Texas law requires that arbitration clauses be signed, so long as they are written and agreed to by the parties."  *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005).  PRRS contends that Hunsinger's formation "of an enforceable agreement by his own conduct is black letter law."  (D. Br. at 13.)  It supports that assertion with an

illustration from the Restatement of the Law, Consumer Contracts § 2 (2024)[2] and

cases in which courts have found that a person, by parking a vehicle, formed an

agreement that incorporated terms conspicuously posted at the parking lot.  (*Id.* at 14

(citing cases).)  PRRS additionally points to cases in which its arbitration provision

has been enforced against people who parked in its lots.  (*Id.* at 14-15 (citing cases).)

PRRS's argument and cited authorities, however, do not meet Hunsinger's

argument.  He does not take issue with the general proposition that a person who

parks at a lot with terms posted can be found to have entered a contract or agreed to

arbitrate.  *See, e.g.*, *Franklin v. Parking Revenue Recovery Servs., Inc.*, 832 F.3d 741, 745

(7th Cir. 2016) (holding that driver formed contract when they parked in a lot with

prominent signage); *Tobey v. Ace Parking Mgmt., Inc.*, No. 3:24-CV-2932-X, 2025 WL

1919887, at *2–4 (N.D. Tex. July 11, 2025) (same).  Rather, he argues that he never

formed an agreement to arbitrate any dispute because he was not the person who

parked a car in the Main Street parking lot on May 5.  (P. Resp. at 7.)

Hunsinger provides evidence to support his denial that he parked the car

depicted in the photos on May 5.  He testifies in a declaration that he was not the

person who parked the in the Main Street parking lot on May 5.  (Dkt. No. 21-2 at 2

---

[2] PRRS quotes the following example from the Restatement:

A consumer parks a car in a private parking lot.  A prominent sign at the
entrance to the lot states that a $10-per-hour charge will be collected upon exit
from the lot and that the business is not responsible for damage to the vehicle
while parked in the lot.  By entering the lot, the consumer manifests assent to
the transaction concerning the use of the parking lot, and the terms posted on
the sign are adopted under subsection (a).

¶ 7.)  He further states that he once owned a Pontiac vehicle but sold it on February 17, 2025, and notified the Texas Department of Motor Vehicles ("TDMV") that he sold it to a named buyer.  (*Id.* ¶¶ 5, 6.)  His testimony is corroborated by a printed page showing that he submitted a Vehicle Transfer Notification to the TDMV on February 18, 2025.  (Compl. Exh. D.)  Hunsinger also provided a copy of the Texas Certificate of Title for a 2010 Pontiac G6 sedan that is completed for assignment of title on February 17, 2025.  (Dkt. No. 21-2 at 8-9.)  The vehicle depicted in the Notice of Non-Compliance appears to the undersigned to be consistent with a Pontiac G6.  (*See* Compl. Exh. A.)

PRRS's submissions do not undermine Hunsinger's proof that he did not own the car seen parking in the Main Street parking lot and did not park there.  Its only evidence on this point is Drow's statement that, according to PRRS's records, the car was registered to Hunsinger.  (Dkt. No. 16 at 1-2.)  Drow does not identify the records upon which PRRS relies, explain why those records should be considered current, accurate, and reliable, or otherwise call into question Hunsinger's evidence that he sold the car in February 2025.

"Mutual assent is a fundamental essential of every contract."  *Nat'l Cas. Co. v. Lane Exp., Inc.*, 998 S.W.2d 256, 264 (Tex. App.—Dallas 1999, pet. denied).  Having failed to show by a preponderance of the evidence that Hunsinger parked the car and thereby assented to the terms posted on signs, PRRS has not established that he entered into any agreement to arbitrate any dispute, much less one arising out of

9

PRRS's efforts to collect fees associated with the events of May 5.  PRRS does not argue—much less demonstrate—that he can be treated as having assented to terms posted in the parking lot even under the facts as Hunsinger has shown them to be.  That is, in the absence of proof that Hunsinger used the parking lot, PRRS does not identify anything else he did that would have manifested assent to the terms of an arbitration agreement.  *See StubHub, Inc. v. Ball*, 676 S.W.3d 193, 199 (Tex. App.—Houston [14th Dist.] 2023, no pet.) ("Parties may manifest their assent to an agreement . . . by conduct, provided they intend to engage in the conduct and know or have reason to know that the other party may infer assent from their conduct." (citing *BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 202 (Tex. 2021))).  PRRS therefore has failed to show that Hunsinger entered into an agreement to arbitrate.

## IV.  CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that PRRS's motion to compel arbitration (Dkt. No. 12) be **DENIED**.

**SO RECOMMENDED** on December 4, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

10

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).